It pleases the Court, James Fife of Federal Defenders, on behalf of the petitioner, Mr. Chen. Is this case moved? No, Your Honor, it's not. Mr. Chen is still subject to restrictions on his liberty, similar to criminal parole, and his release can be revoked at any time. But he didn't ask for any more than he got, did he? He got exactly what he asked for in his petition. I don't believe that's true, Your Honor. Why is that not true? One very important reason, because Mr. Chen has been released on supervision. But he didn't ask to be released without supervision. He asked for a supervised release. That's correct, Your Honor. So he got exactly what he asked for. I think there's one really important distinction is that right now, as noted in the Rodriguez case, he's subject under the regulation 241.4L. Sure he is. And if he had asked for an unconditional release, then he would probably fall under several of the exceptions that can be stated in terms of mootness. I'm having real difficulty understanding which exception your client falls under. If you look at it just under straight case and controversy analysis, I don't see it here. You need to help me on this, because he asked for ABC. He got ABC. Actually, Your Honor, there's two reasons why I think he did not get the full release that he asked for. And why this case is not moot. Number one is because the full relief is not simply his release, but implicit in that is that he asked for a judicial determination that he was entitled to release. That's important because under the regulation, he could be pulled in any time for any reason by the government. But if there is a decision in a habeas corpus case, it is now race judicata. So you're saying that in a habeas corpus case, if somebody doesn't specifically plead something, that you can imply that he asked for something else. Is that what you're saying? Your Honor, by the very fact that he brought the case to a federal court means he was asking for a judicial decision on his rights. I understand that, but we get cases all the time, counsel, where people ask for relief of various sorts and we get a notice that the case has been settled. What you're saying, I gather, is that they can't do that because there's an implicit requirement that a court adjudicate the matter. That a matter remains a case in controversy until there is a judicial decision. That's a startling doctrine. Where do you get it from? Your Honor, it's just because there is a real, very real legal difference between his just being released voluntarily by the government and his having a judicial decision on that basis. I understand that. I don't mean to quarrel with you. I'm trying to understand here. I want you to, if you're right, I'd like to be able to help, but I just don't get it here. He asked for specific things. He got everything he asked for. The only thing that you're saying he didn't get is something he didn't ask for, but you're implying that he wants, which is a judicial termination. But remember, when we write a decision here, it doesn't just affect this case. Correct. But smart guys like you, by the thousands, will cite the case in other situations, and they will say, you know what? This case isn't moot because even though he didn't say so, he wanted D, E, and F. Now, again, the Constitution says we can only decide cases where there is an actual case or controversy. But what's the case or controversy at this point in this case? Then let me go to my second reason, Your Honor, because I think I have another specific answer for you, Judge Smith, is that this is a prime example of what the Supreme Court has pointed out in the case of Nebraska Press Association v. Stewart, that this is a case where the error is repeatable and yet can evade review. And, in fact, not only is it repeatable, the error here is not only repeatable, it has been repeated, because in two cases that I'm aware of in the Southern District of California, the government has cited the decision in this case in support, in opposition to petitions for review, petitions for habeas corpus, excuse me. So this has actually been repeated. This is an error of law, and I would claim an egregious error of law by the district court, which is being repeated and can be repeated in Mr. Chan's case if he's brought into custody again. But I know, as a fact, it is being repeated in other cases. This case is being cited as authority and is being followed by other courts. When you say this case, do you mean? Judge Gonzalez's decision in this case. Okay, so you're saying that they're citing the district court decision in this case, right? Yes, correct. And arguing against other detainees' petitions for habeas corpus, citing this erroneous decision to oppose those petitions. Counsel, what are we to take by the joint motion asking this court to dismiss the appeal? Have you walked away from that now? Are you no longer agreed to that? Yes, Your Honor, I would respectfully ask the court to allow me to withdraw my support of that motion. I was aware of the Rodriguez case when we filed the motion, but quite frankly I was only concerned with the detention part of that, not with the class certification part of that decision, where the mootness. I wasn't even aware. In fact, when the court cited this in its order, I wasn't even aware how that case could even apply here until I went back and read it and realized. So what is it that you want us to do today? Your Honor, I want you to proceed to the merits on this and rule that Judge Gonzalez's legal error is in fact error and that it is not that you do not have to have a necessarily impact standard or review to meet Zydvitas. Zydvitas is good reason to believe a minimal evidentiary showing, not 100 percent certainty or necessary or will affect. That is far too high. That's higher than we find in a criminal case. How long would you have in this case? How long ago was the joint stipulation entered in to dismiss the case? I believe that was at the end of September, September 29th. Okay. And how long under your new rule of law would you have to do that? Do you do a year afterwards to withdraw your consent to settling the case? Well, Your Honor, I don't know of any. I'm just frankly not aware of any procedure for withdrawing from the stipulation. It's a new rule. Why create a new rule? It is a new rule because it's not covered by the statutes or by a rule. Since we're in the legislature now, I'd like you to help me fill in this blank. You want a new rule where you can withdraw the joint consent to settle the case. You said you're not sure about a year. How about six months? Can you do six months afterwards? Your Honor, I would say that given that this court's order was in October, I would say how about 90 days? Ninety days. So when we write this new legislation, you're suggesting that it be 90 days. Your Honor, I wouldn't pick any particular time. Because it's a non-statutory request, because it's something that's not covered by the rule, I think it should be done on an equitable basis. Equitable. Yes. Please, Your Honor. It is equitable that once the court has pointed out a legal reason why the case may not be moved and asked us to consider it, one which I admit as counsel I did not consider at the time. Did you sign the stipulation on the 29th of September? Correct. That's when it was filed. And then when did you sign this? The court's order was on October 23rd. Oh, let's see. The stipulation was signed on the 29th. Signed and filed with the court, yes. And what? Signed and filed with the court. Signed and filed with the court. Yes. When was it filed with the court? It was filed on the 29th of September, I believe. That was seven days after Mr. Chin was released. And when I became aware of it, as our usual procedure in the Southern District was that, well, the client's released, well, in a cooperative mood of cooperation, we agree to dismiss the case. But if I can just explain the procedure in which I decided even to appeal this case in the first instance, when Judge Gonzalez made her decision and she said, well, without prejudice to renew in 90 days, I thought very severely about asking her to just leave the case open and I'm sure in three months nothing would change, Mr. Chin would still be there, and we could go back and she would grant the writ. But when I thought about the legal consequences of her decision and realized that the government made very well and, in fact, ultimately did, cited in other cases, and Judge Gonzalez is the chief judge in our district. She's a well-respected jurist, and other judges will look to her decision. I realized we had to challenge that because it was legally error. You were, in your habeas petition, were you asking for relief under 1231 or 1226? 1231, Your Honor. Or 1231. And what kind of relief was granted you by the government in September? It was under 1231. It is 1231. Yes, he has a final removal order at this point. But the 1231 release is mandatory, not discretionary. Is that correct? I don't believe so, Your Honor. I mean, I think, well, I would say that, yes, once you have passed this ad vitis period, the six months, and there's no foreseeable removal likelihood, yes, it is mandatory. What is the, under what circumstances might the government revoke your client's freedom? Your Honor, let me give you three examples of cases that we have actually had. I've been doing these cases for four years. We had a case in our office where the deportee was on bond for 11 years without any allegation of a violation that he had done anything to violate his bond. The ICE went to his address looking for someone else. They asked Mr. Cowell, what's your name? They checked him out, and they said, oh, you're a deportee. They took him into custody right then and there with no warning. He hadn't violated anything. They held him until, since he is Chinese, they finally released him because they couldn't remove him. We've had cases where people are pulled off the street. We've had cases where they're called in for their monthly report, and they're not allowed to leave, again, without any warning.  What would change is that since Mr. Chen's eligibility for release is now a matter of res judicata, the court has said that there is no significant likelihood of removal, I believe that for the government to take him back into custody, they would have to be sure they had enough changed circumstances to believe that he will be removed that they could overcome the res judicata effect of that previous decision. He could still be pulled in. He can still be, the government can still pick him up today if he were to commit a crime or. . . Or for no reason at all, Your Honor. Just because they subjectively believe we can now remove him. Counselor, were any of the cases, you mentioned two cases that you worked on. Did any of those cases occur subsequent to the publication of Prieto Romero, Casas Castellon, and the Vioff case? Yes, in fact, the Cowell case that I mentioned, that was a 2008 case handled in our office. Okay, and those other cases did not help you in getting relief? No, because he was not a Prieto situation because he did not have any pending appeals. He was a Pures Advaitis case. Okay. But you have protection under Zabides, or however you say it, because the six months had passed, right? Yes, yes, though that's not always completely recognized. As I said, one of the cases that has cited this decision, in Judge Gonzalez's decision, he had been held more than six months, and quite frankly, he was a new district judge, and I think it was his first immigration, 2241, and this Chen decision was cited to him, and then he decided that even though he'd been held for more than the six months, he said, I'm going to deny the petition without prejudice to come back in two months. Very similar to Judge Gonzalez's decision. I quite believe that Judge Anello probably looked to Judge Gonzalez's decision since it was cited to him, and that's why I believe that this case, it's legally erroneous. This is an incredibly, impossibly high standard for anyone to meet. It's just incorrect and shifts the- And I understand. Believe me, I really empathize with the great work that you folks do. This is a difficult area. I wrote a case, Castaneda, that dealt with medical treatment of aliens, and this is a huge problem that we have in our country. The problem I'm having, frankly, with your argument is that we have a system of procedural rules which have stood the test of time for a long time, and you voluntarily entered into this dismissal. Your client got what your client asked for, and to correct this issue, I'm afraid, opens up a Pandora's box that will be unclosable. I just empathize with you, but I don't see how we get there, counsel. There's just too much that would come from that. It would open too many things, and we have a case here that, with respect, I don't see how we get around the case and controversy problem. That's a constitutional requirement. Your Honor, if I could just put two quick points about that. One is that you were speaking before about a time limit. Certainly, any time before submission might be a reasonable time in which you can withdraw. And I would say that it's precisely analogous to withdrawing the appeal in the first place. Why am I not committed to pursuing the appeal? Why am I allowed to withdraw that appeal once it's been filed? Because once I decide that this is not in my client's best interest, that in fact there is some change in the law or something, and I decide this is no longer an advisable thing to do, why would a whole appeal does not have to proceed? But how come I can't withdraw a motion? We hear cases all the time that deal with the issue of jurisdiction, where we decide whether we have jurisdiction. So this is really no different than that. I mean, we are here today because we recognize the fact that you are saying, wait a minute, we need to look at this jurisdictional thing here. What I did, I did thinking about X, but now that I look at this, this is not correct for my client's purposes. I need to change that. So it's a jurisdictional consideration. That's why you're here. Well, Your Honor, if the Court believes that I really don't have a right to withdraw with it, I would still respectfully argue that the Court deny the motion.  Well, your argument, let's say at its base, is that sure, Chen got what he asked for when he was released, but had the case, and that the case is not moved because if there's a hearing on the merits of this case, that he has a chance of getting more favorable conditions from the Court. Correct. And I would say that. So there's still, it's not moved because there's still an opportunity for him to get conditions that are more favorable than the conditions that are, to which you agreed in the dismissal case. And I would say he also has the protection. Well, you just made a big mistake. I admit, Your Honor, that it. No, you admit it. In the sense, in the spirit of cooperating with the government as we, because I have to deal with Mr. Beckley on many, many cases, and we do try to cooperate, in the spirit of cooperation, to end a case when maybe, even though I did, I did feel that this is a legal issue that will arise again in many cases, and we wanted a legal decision on the judge's error, and that was the whole reason for bringing the appeal in the first place. I was perhaps way too hasty. I'm still just a little confused here, because your client has been granted a 1231 release, and that was the relief that you prayed for in your habeas corpus petition. So if we were to decide this, what if we were to say that this is moot, and can we vacate the district court's decision if we were to deem it moot? I don't believe so. If it was moot, I don't see that there's anything this court could rule on at all. Okay. And that would leave you with a district court decision that you don't like in place. Correct. And this is why we need to proceed. But I'm trying to think, okay, if we were to decide this, and we were to decide it favorably to your client, we would decide then that your client was entitled to what? 1231 release? He was entitled to release because there was no significant likelihood of his removal. Okay. But that's 1231 relief, right? Right. Okay. But that's already what you've got. Well, I think that there is a difference. He has got release. That was the substance of his request. But it's release that is not as sufficient as where he had obtained release due to granting the petition. And I think maybe we tried to cover this at the beginning. Maybe I didn't understand it. So just help me understand. What's the difference between the 1231 relief that the government has granted to your client in September and the 1231 relief you could obtain if this court were to reverse Judge Gonzalez's decision? Quite simply, the release by the government is an act of grace because they can revoke it at their will at any time. Whereas the release by the petition is a judicial act, and they must, if they intend to bring him back, though they have the statutory right to bring him back into custody, they will have to face the race judicata effect. And that should give them pause. And I think that is very significant real protection for Mr. Chen. So the government today can just go out and grab Chen and put him back where he was. Absolutely, Your Honor, because as Rodriguez pointed out, there's very minimal due process protection on a revocation of supervision, very minimal. And in my experience, even that is not even complied with. Is there a ‑‑ how about an abuse of discretion standard? Nothing like that, Your Honor, I mean, because we have no way of challenging it. The only due process, the only process that a revokee of supervision is entitled to. Okay. Yes. There's no way you can challenge it. There's no way you can challenge it. And I just want to point, one other case is Clark v. Martinez. This is exactly the situation in Clark v. Martinez where the Supreme Court said, despite Benitez's release on a one‑year parole, this case continues to present a live case or controversy. Thus, Benitez continues to have a personal stake in the outcome of his petition. And that is exactly Mr. Chen's position. With respect, counsel, maybe I misrecalled the case, but I thought in that case that he had asked for an unsupervised release. He got supervised release, and that's why the Supreme Court said what it did. No, no. He was on parole, Your Honor. He was released on parole. It was limited to one year. But the Supreme Court said, even though it's limited to one year, he said, his current release, however, is not only limited to one year, but subject to the Secretary's discretionary authority to terminate. And that is precisely Mr. Chen's situation. Well, it's like a habeas case where there's still something out there where there's a chance of a violation or ‑‑ and so we can't say it's moved. That's why I acknowledged it to criminal parole. Yes. That comes up in these habeas cases all the time. Yes. Mr. Chen is still subject to that, and that's why he needs the protection of a judicial decision on this issue. But if it had been pled differently and you had asked for a non‑discretionary ‑‑ I mean a release from any discretionary situation, he'd have been protected, right? Yes, Your Honor. But we think that's an unusual thing. And we always ask in our petitions that they be released under the normal and appropriate conditions of supervision. But now you want relief in a non‑normal way because he didn't plead for it. Yes. Yes, but hasn't the landscape changed in this field in the past few months? Not as related to Zebitis. I don't believe so. I mean, I think that's pretty much the same. What's changed is Judge Gonzales is elevating the standard for shifting the burden. After all, Zebitis was a burden shifting regime. It was just simply make a minimal showing and then let the government, who is in the best position to determine whether this person is removable, put the burden on the government because then the judge will have the best information from the source that's most likely to have that information. So that's why the burden is very minimal in order to shift it. Also because of the fundamental liberty interest, which is at stake. That's exactly what Zebitis was looking at. But when Judge Gonzales said you must show that it will necessarily impact, that's far too high. That's, in fact, an impossibly high burden. Because statistics, for instance, can never show certainty. They can only show probabilities. I'm way over my time. There's no way if Judge Bidey brought the subject to the fore that we can vacate the troublesome case, the case that troubles you, Judge Gonzales, public. Your Honors would know much more about it than I, but to me it seems like if a case is moot there is no case of controversy. It's only become moot on appeal, I think, is the problem. So it wasn't moot when it was before Judge Gonzales. It's definitely not. Okay. Thank you. Good morning, Your Honor. Sam Betweave, U.S. Attorney's Office, San Diego, for the government. I think I can boil this down to a difference between this case and the Martinez case and the Rodriguez case is the regulation under which Mr. Chen was released. And although it's not stated, it's not stated specifically in the records, but it's the one that applies in his circumstances, is 8 CFR 241.13. And under that regulation, this applies to aliens such as Mr. Chen who are post-order. There's avid us. And the only two, as stated in that regulation, the only two circumstances under which they can be taken back into custody is if they violated conditions of release or detention now, in other words, they've got travel documents basically. It's detention as stated in the Martinez case. Detention became necessary to effectuate his removal. I'm sorry. I didn't understand. So one is if he violates the conditions of his release. Correct. Okay. And the other is if the government obtains the travel documents or has. . . If the government says, okay, we now have your travel documents so you can now be deported. That's correct. And in Clark v. Martinez, it actually says if that were the only two, that would be okay. The case would no longer be a case of controversy. But there still is a case of controversy because it's stated in that case, and Rodriguez relied on it, that under the other regulation, and in Martinez it was 212.12H, and then I'm sorry I don't have the citation of the one in Rodriguez. It was a different regulation. The government had three circumstances, but basically the two that I just said plus just its discretion. Counsel, I'd like to ask you about a really sensitive thing. We're part of Article III. We don't deal with foreign relations here. We don't want to interfere with foreign relations. But it appears from this case that Mr. Chen is only one of many, many, many, many people who under our regulations should be returned to the People's Republic of China. The People's Republic of China doesn't seem to have much interest in having these people back. They're not cooperating. They're not doing much of anything. Yet we have absolutely no jurisdiction over the People's Republic of China. But it is a reality that these people wait a long, long, long, long time. Putting aside for a moment the procedural problems into which the petitioner has gotten himself, what's the government's position as far as what the case law ought to be in terms of these situations? This is not Mr. Chen's fault. Let's assume Mr. Chen were here just on a fresh-up deal. It was a live controversy. And he could – the burdens on the government, as you know, under the case law, under Zabudis and others, to show that there's a way that he's going to be able to go back. But here they talked about a certain period of time. The Chinese government said they're going to do it a certain period of time. And yet a lot of time has passed. How can that be just? How can that be fair under the Zabudis standard? Well, Your Honor, definitely China is a problem country. We have other problem countries. And there's a lot of, I guess we could call negotiation between our deportation officers and their consulates and embassies. And we're trying to read their minds, and we're trying to give them everything they want. We don't get a rejection. If we get an outright rejection, and the bottom line should always be, is this person a national of the country, that should be really the only issue. But certainly there are countries we have problems with where the country will put up obstacles or refuse to recognize nationality of the person because there are other reasons that they don't want this person back. Some type of standard where if you have somebody in 1231 status, they're all ready to go, but the country won't take them. We had this with the Sudan and so on, or in Somalia, where there's simply no government to take them back. And they've been released, basically. Mr. Chen is, of course, now out, not in custody. But is he just in a limbo where it could be 10, 12, 14, 20 years if the government of China doesn't respond? Well, no, Your Honor. Every case is fact-specific. It would be difficult to make the right decision. There has to be some limit to it. Well, I think there is. The rules and laws do place a limit on it, and every case is dependent on its facts. We're looking for an answer from the consulate. And certainly after a certain amount of time, if we don't get an answer, and that's what happened in Mr. Chen's case, there was hope. We responded to their requests for additional information. There was some lack of cooperation from Mr. Chen in this case. It's not as bad as others. This may seem inappropriate, but I'm just going to ask it anyway. Can we get the government's assurance that in the case of Mr. Chen, in light of the delays with the government and so on, you're not going to take him back into custody, so long as he doesn't violate his supervision in terms of committing crimes or any of the other provisions? Or if we get the travel documents. Or what? If we get the travel documents. If you get, in other words, but that's when the Chinese government cooperates. Correct. Okay, subject to that. And the answer is yes, absolutely. Absolutely the government gets that assurance. So counsel can rely on that then? Absolutely. And I would just as a footnote say that if there's a question like this, I would call the Court's attention to its decision in Hickrin-Perone, 930 F. 2nd, 773, which deals with the question of voluntary cessation, where the government releases an alien to try to moot out the case, or at least that's the suspicion. And in that decision, the Ninth Circuit said, well as long as the government makes the assurance that I'm making here today, then we don't have a concern. Counsel, you cited us the regulation ACFR 241.13. Is that the same regulation under which he would have been released had the Court granted this habeas relief? Yes, Your Honor. Okay. So I asked Mr. Fife this question. I want to ask you the same question. What is the difference between the 1231 release that Mr. Chen obtained in September and a 1231 release if it had been ordered by the district court or if this Court were to reverse Judge Gonzales? Absolutely none, Your Honor. No difference. There's nothing more that Mr. Chen can get. I don't see how the ---- Mr. Fife argued that there was a res judicata effect that he would be entitled to. Well, whether the district court would just order the ICE or DHS to do what it has to do anyway under the regulation, the way it ---- the court couldn't, at least it would be beyond the district court's authority, to order that ICE never be able to take Mr. Chen back into custody, despite the law, the statutes and regulations. But in any case, that's not what Mr. Chen asked for. So the Justice Department would be willing, then, to supplement the document under which Mr. Chen was released to provide that he would only be brought back in if there was a violation of the law. Or he'd get the travel documents. He got his travel documents. And that would be ---- yes, Your Honor, I think that would help if we put on the documents that he was released under 8 CFR 241.13. That's what that says. And that's the situation he's in. So then he's ---- are you saying then that he would get the same relief he would get if there were a ruling by a court on the merits? Yes, Your Honor. Your Honor, I think Mr. Feist just doesn't like the substance of the rule of law, I suppose, that Judge Gonzales made, which was that there has to be some specific fact stated by the alien to meet his or her burden of showing unlikeliness or good reason to believe that there's no significant likelihood of release. He doesn't like that part of Judge Gonzales' decision, which is not precedent. But if she ---- Well, follow it down there. But if she decided that there wasn't enough ---- pardon me, if she ---- That's one of the busiest courts involved in immigration cases in the country. Absolutely. Yes. So a lot of people are reading that. Well ---- Would you be willing to stipulate that all of the releases that are granted under this section, the same one that was used in Mr. Chan's release, that there would be a provision similar to this stipulation? I don't think I would join in that request. No, I can't. I can't rewrite the ---- Way, way, way too broad. I'd like my brother here, but I think it's just way, way too broad. In this particular case, I agree. Well, those are just a little opening negotiations. Well, I can assure you, Your Honor, that the ---- I mean, what Your Honor is asking for is that ICE or DHS would always release aliens according to the regulations and the statutes. I mean, they released Mr. Chan according to this. Although it's not specifically cited in the paper, this is the only way they could have done it, was under 241.13. When you offer him one of these discretionary releases, you can yank him back in. Not according to the regulation, Your Honor. Huh? Not according to the regulation in Mr. Chan's circumstances. There is more discretion if he's not a post-order Zadvigas situation, which he is now. That places him under more restrictive ---- in a more restrictive regulation, 241.13. Other regulations, such as the one in Martinez, such as the one in Rodriguez, do allow for this additional discretion beyond just violation of conditions or obtaining the travel documents. That's what I'm saying is the distinction. Basically, in this case, when you look at the regulation you've cited, plus the stipulation that you've agreed with the court on, Mr. Chan need have no concern that he's going to be picked up again unless he violates the law or unless the People's Republic of China issue a visa and he doesn't show up to be deported. Is that correct? Correct, Your Honor. I wouldn't say technically not a visa because he's a national citizen, but travel documents. Travel documents. Correct, Your Honor. Where do you put that? Now, how many of these have you issued in the past year? I have no idea, Your Honor. Sorry. Here we had this case, and why did you just decide to release him on September the 18th? Well, I ---- What brought all this about? You know, Your Honor, I think ---- That was about the day after they filed their brief? Your Honor, I believe that this release coincided pretty closely with Judge Gonzalez's order stating that Mr. Chan could refile after 90 days. And the 90 days was approaching, and he was released. Counsel ---- No, it just coincidental. I don't know. I don't know, Your Honor. I mean, we were all watching this. Presumably they could have gone back to Judge Gonzalez at the end of 90 days and said, okay, nothing happened in the last 90 days, now you've really got to let us out. I think that that was the signal she was sending, and we heard the signal. Okay. Is there any reason ---- if we were to determine that this is moot for appellate purposes, that wouldn't require us to vacate Judge Gonzalez's June decision. If ---- Is there any mechanism that the two of you have to be able to request Judge Gonzalez to vacate her decision, which would then, I think, grant Mr. Fye's client the res judicata or at least eliminate the res judicata effects that he's worried about? Well, okay, just so I understand, what he doesn't like is Judge Gonzalez's standard that she set. She required him to make an individualized showing of good reason to satisfy the good reason to believe standard. He doesn't like that ruling. Well, the government would be perfectly free in the next case to press that ruling again on the next judge. But I would just be what ---- I don't know, Your Honor, I don't know what the basis would be for agreeing to a vacation, a vacatur of a decision, especially one we like. And I, for one, am not asking that you do that in this case. As a matter of fact, I would like to say how nice it is to see two very capable lawyers who can cooperate in a cordial way with one another for the benefit of the administration of justice. We see some people who can't even look each other in the eye, and it doesn't help. So, at least by my standard, I thank you both for the cooperation that you've shown in helping us to try to resolve some of these very difficult matters. They're tough. They really are. Thank you, Your Honor. Appreciate it. Well, I'm just wondering why this is the first time, as I can recall, that we've had a case like this come up to our court. I don't remember any other cases that I've been involved in. He's only been here a short time. Yeah. So, I'm not going to change a heart. This might be responsive, Your Honor. The reason, Your Honor, I wouldn't have seen one is because they do moot out. I mean, when Mr. Fife offered to stipulate to go into this joint motion, I practically fell out of my chair because he never stops until his client gets everything that his client asked for. So, that's why this court probably never sees these kinds of cases. Thank you, Your Honor. Thank you. Well, that's good to know, too. All right. The matter is submitted. Let's see. The next matter. It's all submitted. Are you on the next matter? We are both. Head to head on this one as well. That's what I mean. That's why we have to have a modus vivendi. Otherwise, we just could not practice law the way it should be.
judges: Pregerson, Bybee, Smith M.